OPINION
{¶ 1} On December 13, 2001, a guardianship of Clara M. Michael was established by the Probate Court with Kevin A. Craine and J. Harris Leshner appointed as co-guardians of the estate and two of Clara's children, Brian T. Michael and Patricia A. Sauer appointed as co-guardians of the person ("appellants"). No testimony *Page 2 
was presented before the guardianship was established and no expert report was submitted in support of incompetency. The parties, other than the ward, agreed to the establishment of the guardianship. No appeal was taken from that decision.
 {¶ 2} Over the next few years, the ward was evaluated six times by doctors. Many motions were filed, including a motion for referral to mediation for a less restrictive alternative in lieu of further testing on June 27, 2006. On October 6, 2006, a motion to terminate the guardianship was filed by co-guardians of the person. After April 2006 but before December, the ward was diagnosed with cancer and was being treated. In October 2006, she was involved in an automobile accident.
 {¶ 3} On December 8, 2006, a magistrate held a hearing on the motion to terminate and the motion for a less restrictive alternative. The magistrate denied both motions and continued the guardianship with the co-guardians of the person and the co-guardians of the estate. The co-guardians of the person, filed objections to the magistrate's decision. The trial court heard statements from the attorney for the guardians of the person, Patricia A. Sauer, and one of the guardians of the estate. The trial court found that the continuation of a guardianship was in the best interest of the ward, but upon application of Ms. Sauer, appointed her as sole guardian of the person and the estate.
 {¶ 4} Appellants filed a notice of appeal, and raised the following assignment of error:
 The probate court committed reversible error when it eschewed the mandate of Section 2111.47
Revised Code to deny termination of a guardianship. *Page 3 
 {¶ 5} R.C. 2111.01(D) defines an "incompetent" as "any person who is so mentally impaired as a result of a mental or physical illness or disability, or mental retardation, or as a result of chronic substance abuse, that the person is incapable of taking proper care of the person's self or property * * *." There is a presumption that once a person is found to be incompetent that he or she remains incompetent, but the presumption is rebuttable. In re Breece (1962),173 Ohio St. 542, 553. Pursuant to R.C. 2111.47, a guardianship may be terminated upon satisfactory proof that the necessity for the guardianship no longer exists. R.C. 2111.47 provides, as follows:
 Upon reasonable notice to the guardian, to the ward, and to the person on whose application the appointment was made, and upon satisfactory proof that the necessity for the guardianship no longer exists or that the letters of appointment were improperly issued, the probate court shall order that the guardianship of an incompetent terminate and shall make an appropriate entry upon the journal. Thereupon the guardianship shall cease, the accounts of the guardian shall be settled by the court, and the ward shall be restored to the full control of the ward's property as before the appointment. Such entry terminating the guardianship of an incompetent person shall have the same effect as a determination by the court that such person is competent.
 {¶ 6} In Breece, supra, the Supreme Court of Ohio considered the evidence necessary to satisfy the requirement of "satisfactory proof," as follows, at 555:
 Where the presumption is a rebuttable one * * * the production of evidence disputing or contrary to the presumption causes the presumption to disappear where such evidence to the contrary either counterbalances the presumption or even when it is only sufficient to leave the case in equipoise.
 {¶ 7} In this case, we find appellants failed to present evidence to counterbalance the presumption of incompetence or leave the case in equipoise. At the *Page 4 
hearing before the magistrate, the ward, Clara, testified. She was able to recite her address and that she lives with her son, although she could not name her son. (Tr. at 31-32.) She did not recognize the co-guardian of the estate. (Tr. at 33.) She testified that she pays her own bills and has approximately $100 per month. (Tr. at 33.) When asked, she stated she has eight children when she has six, but when asked to name the children, she was able to do so. (Tr. at 34.)
 {¶ 8} Dr. Lewis B. Hoyer, the court-appointed expert, testified that he had met with the ward on April 25, 2006 for an examination. He believed that her memory was good but she did have memory declines, which were in line with the normal memory deficits accompanying the aging process, since Clara was 88 years old at that time. He believed she had the ability to make her own decisions and although she had difficulty regarding the amount of money she owned, she knew what should happen with the money, which he believed demonstrated discretion. (Tr. at 41.) He testified that Clara was competent and did not want a guardian. (Tr. at 43.) Even though she needs help with her bills, she had an understanding of what was happening. (Tr. at 45.) However, on cross-examination, he testified that she is a deferent person and has the possibility of being easily intimidated. (Tr. at 46.) He believed Clara's inability to testify accurately on the witness stand was due to feeling undue pressure from being a witness and forgetfulness related to feeling threatened by the court process. (Tr. at 47-49.) The fact that she could not identify the amount of money she owned was due to the fact that someone else, co-guardians of the estate, managed her money. (Tr. at 48.)
 {¶ 9} Finally, one of the co-guardians of the estate, Kevin Craine, testified. He objected to the termination of the guardianship because Clara was potentially a victim of *Page 5 
exploitation because before the guardianship was established, she was a victim of exploitation. (Tr. at 65.) He also believed that changing guardians would cost Clara money to transfer the account. (Tr. at 70.) He stated that although he did not tell Clara how much money she has, he does report to her son regularly and she should be aware generally of how much money she owns. (Tr. at 72.)
 {¶ 10} The magistrate found that even though in April 2006 when Dr. Hoyer examined her she had progressed in her faculties, after contracting cancer and being involved in an automobile accident, her progress had reversed and her faculties were affected. After Clara's testimony at the hearing when she was unable to identify family members or express any ability to manage funds, the magistrate found that the guardianship was necessary and denied the motion to terminate.
 {¶ 11} The trial court adopted in part and reversed in part the magistrate's decision. The trial court found the evidence warranted that the guardianship continue but determined that one guardian would be sufficient, rather than four guardians. While evidence was presented that Clara was competent, the magistrate and trial court found that Dr. Hoyer's testimony regarding his examination in April was not as relevant as the court's observations of Clara at the hearing in December. The fact that she could not identify her family members or express any ability to manage funds or have any understanding as to the value of her funds and who paid her bills for years was convincing evidence that she could not take proper care of herself or property. Appellants did not provide satisfactory proof that the necessity for the guardianship no longer existed. Appellants' assignment of error is not well-taken. *Page 6 
 {¶ 12} For the foregoing reasons, appellants' assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas, Probate Division, is affirmed.
Judgment affirmed.
P. BRYANT and FRENCH, JJ., concur.
T. BRYANT, J., retired of the Third Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 1